IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LING ZENG,                                §
                                          §
        Plaintiff,                        §
                                          §
VS.                                       §    Civil Action No. 3:23-CV-1570-D
                                          §
CITY OF JOSHUA, TEXAS, et al.,            §
                                          §
        Defendants.                       §

MEMORANDUM OPINION
AND ORDER

Plaintiff Ling Zeng ("Zeng") sues the City of Joshua, Texas (the "City") and Joshua

Police Department Officer Justin Cox ("Officer Cox") in his personal and official capacities,

asserting claims under 42 U.S.C. § 1983 for violations of her rights under the First, Fourth,

and Fourteenth Amendments. Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6)

for failure to state a claim on which relief can be granted and on the ground that Officer Cox

is entitled to qualified immunity. Zeng opposes the motion. For the reasons that follow, the

court grants the motion and also grants Zeng leave to replead.

I

This lawsuit arises out of a dispute between Zeng and the City that culminated in her

being arrested and charged with a misdemeanor offense.[1]

---

[1]The court recounts the background facts favorably to Zeng as the nonmovant. In
deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as
true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal
Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v.
Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6)

Zeng owns a 60-acre property that is located in the City of Joshua. The City wishes to purchase the property, but Zeng refuses to sell. As a result, for the past few years, the City has subjected Zeng to harassment and intimidation. The ongoing conflict came to a head in a June 2023 mowing dispute.

On June 19, 2023 the City notified Zeng by email that, if she did not mow her entire property within seven days, the City would place a lien on the property and send its own contractor to mow the property. Two days later, Zeng met with the City's fire marshal and fire chief, who showed her which areas of the property needed to be mowed and advised her that the deadline was June 26, 2023. Zeng immediately hired a contractor, who worked steadily on the mowing from that day through the morning of June 26, 2023. Although by that time Zeng's contractor "had mowed approximately 94% of the acreage that the City required to be mowed," the City instructed the contractor to stop mowing and sent its own contractor onto the property to complete the job. Am. Compl. (ECF No. 10) ¶ 19.

When Zeng's contractor notified Zeng, she drove out to the property, where she found the fire chief, the fire marshal, and several police officers, including Officer Cox. Zeng "asked the fire chief why they had not waited until the end of the day, as agreed. The fire chief continually changed the subject and would not answer." *Id.* ¶ 20. Zeng also "asked for the name and address of the City's contractor," but "the City officials refused to answer [her] [] question." *Id.* "Frustrated by the interference of the police officers, Ms. Zeng decided to

standard)).

- 2 -

obtain the name of the City's contractor herself, so that she could address the situation later." *Id.* ¶ 21. "She informed the police officers that she was going to ask the contractor's name, since it was her private property and she had a right to know who was on it." *Id.*

Zeng's contractor drove her to where the City's contractor was mowing. When she "gestured for him to pause his mowing," he "opened his cabin door and invited her into the vehicle to speak to him." *Id.* ¶ 22. They had "a civil, peaceful, and respectful conversation on her own private property. [She] obtained the contractor's name, and attempted to obtain his address, but he declined to give it to her." *Id.* Then, as she "exited the cab of the contractor's vehicle, the two Joshua police officers appeared from nowhere, yelling, and forcibly grabbed and handcuffed [her]." *Id.* ¶ 23. Zeng alleges that

> [Officer] Cox used unnecessary force, grabbing her roughly, dragging her, and slamming her into his patrol car. Plaintiff did not resist or display any aggression before or after she was handcuffed, and the violent treatment she received from Officer Cox was entirely unnecessary, excessive, and inappropriate. Also unwarranted was the body search or pat down Officer Cox then began, attempting to touch [Zeng] inappropriately, humiliating her and causing her to demand that he stop molesting her.

*Id.* Zeng was then transported "to the Johnson County Sheriff's Department, where she was strip-searched, and instructed to spread her buttocks and cough. She was held overnight in the Johnson County jail," where she remained "for approximately 20 hours." *Id.* ¶ 25.

The City "issued an immediate news release . . , accusing her of 'interfering with public works.'" *Id.* ¶ 27. Later, in December 2023, the "City filed a criminal case against [Zeng] in Johnson County Court." *Id.* ¶ 28.

- 3 -

> Johnson County charged Ms. Zeng, based on the false and misleading statements contained in Officer Cox's arrest report and probable cause affidavit. Defendant Officer Cox made multiple false statements in his affidavit and report, including a claim that Ms. Zeng had previously displayed a firearm in a threatening manner. Cox used this allegation to justify an invasive physical search and inappropriate treatment of the Plaintiff. Cox's report stated that the owner did not move until he "got closer and grabbed her by her arms to remove her from the tractor." Cox also alleged, "I asked Casey if she was interfering with him, and he stated she was," although Cox's own body camera footage clearly shows that he had never asked the contractor or Ms. Zeng anything during the entire arrest episode. Officer Cox maliciously withheld facts known to him, including the fact that Ms. Zeng had asked the name of the operator of the mower; that the City officials, including Officer Cox, refused to tell her; and that she specifically informed them that she was going to go ask the man herself.

*Id.* ¶¶ 29-30. "When the case was called to trial in September 2024, . . . . [t]he county attorney moved to dismiss based on 'Interest of Justice; lien paid.'" *Id.* ¶ 31.

In July 2023 Zeng brought this lawsuit against the City and Officer Cox in his personal and official capacities. She amended her complaint in October 2024, asserting claims under § 1983 for false imprisonment and wrongful arrest, in violation of the Fourth and Fourteenth Amendments, violation of her First and Fourteenth Amendment right to free speech, and violation of her Fourteenth Amendment rights to procedural and substantive due process. The first amended complaint is Zeng's operative complaint. Defendants now move to dismiss under Rule 12(b)(6), asserting that Zeng has failed to state a claim on which relief can be granted and that Officer Cox is entitled to qualified immunity. Zeng opposes the motion. The court is deciding the motion on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

Before turning to the merits, the court addresses whether it may consider Officer

Cox's body-camera footage, which defendants attach to their joint motion to dismiss.[2]

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a

valid claim when all well-pleaded facts are assumed true and are viewed in the light most

favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d

383, 387 (5th Cir. 2010).  "The court's review is limited to the complaint, any documents

attached to the complaint, and any documents attached to the motion to dismiss that are

central to the claim and referenced by the complaint." *Id.*  Body-camera footage is a

"document" that may be attached to a motion to dismiss. *See Hodge v. Engleman*, 90 F.4th

840, 844-45 (5th Cir. 2024).  The court cannot consider it, however, unless either it is

referenced by the complaint sufficiently to incorporate it, or the court converts the motion

to dismiss into a motion for summary judgment under Rule 12(d).  *See id.*

Here, Officer Cox's body-camera footage is neither attached to the complaint, nor

referenced sufficiently by the complaint to incorporate it. *Compare* Am. Compl. (ECF No.

10) ¶ 29 (making a singular reference to the footage) *with Terrell v. Town of Woodworth*,

2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (per curiam) ("[T]he district court properly

considered the video evidence from the officers' two body cams and Gonzales's dash cam

that Defendants attached to their motion to dismiss because Terrell consistently referenced

_____

[2]Zeng also attached the footage to her response brief.

the video evidence in his complaint[.]").[3] And the court in its discretion declines to convert

defendants' motion to dismiss into a motion for summary judgment.

Accordingly, the court declines to consider Officer Cox's body-camera footage for

the purposes of deciding the instant motion to dismiss, without prejudice to considering it

later, such as at the summary judgment stage.

IV

The court turns now to whether Zeng has stated a claim on which relief can be

granted.

Zeng asserts § 1983 claims against the City and Officer Cox in his personal and

official capacities. Section 1983 imposes liability on every person "who, under color of state

law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution

and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

A municipality is a "person" subject to suit under § 1983 if a deprivation of a

constitutional right is inflicted pursuant to an official policy or custom. *See Monell v. Dep't

of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978); *Piotrowski v. City of Houston*, 237 F.3d

567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official

policy (or custom), of which (2) a policymaker can be charged with actual or constructive

knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."

---

[3]This court's decision in *Young v. City of Irving*, 2024 WL 4193936 (N.D. Tex. Sept. 12, 2024) (Fitzwater, J.), is distinguishable on the same basis. In *Young* the plaintiff repeatedly referred to the police video in his complaint and purportedly attached it as an exhibit to the complaint. *See id.* at *7 n.7.

*Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).   "[M]unicipalities may not assert qualified immunity." *Sauceda v. City of San Benito, Tex.*, 78 F.4th 174, 182 (5th Cir. 2023).

Municipal officials are "persons" who are subject to suit under § 1983 in their personal or official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.*  "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*  "When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as [qualified immunity].  In an official-capacity action, these defenses are unavailable." *Id.* at 166-67 (citations omitted).

V

The court turns first to Zeng's claims against the City.

Zeng maintains that the City adopted a custom of "using municipal power against [her]" that was the moving force behind her being arrested without probable cause.  P. Resp. (ECF No. 21) at 19.  The parties dispute whether Zeng has plausibly alleged the "moving force" element.[4]

_____

[4]The parties also dispute whether Zeng has plausibly alleged an official policy or custom, actual or constructive knowledge, and a constitutional violation.  The court will

- 8 -

> The "moving force" inquiry requires a plaintiff to make two showings: causation and culpability. A plaintiff must show a "direct causal connection . . . between the policy and the alleged constitutional deprivation." The "moving force" inquiry imposes a causation standard higher than "but for" causation. Under the culpability requirement, if the policy is facially lawful, a plaintiff must also show that the municipality "promulgated [the policy] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Even a showing of heightened negligence is insufficient to show the deliberate indifference needed to prove municipal liability.

*Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (footnotes omitted).

Zeng has failed to allege any facts from which the court can reasonably infer that the City's supposed custom of using municipal power against her directly caused her supposedly unconstitutional arrest. She does not plead, for example, that the City directed Officer Cox to arrest her without probable cause, or that suspicionless arrests were customary in the course of enforcement actions against her property. *See, e.g.*, *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 286 (5th Cir. 2016) (reversing dismissal of § 1983 claims on *Monell* grounds where plaintiff plausibly alleged that unconstitutional arrest caused by policy encouraging suspicionless arrests). Rather, she focuses her factual allegations on the City's incitement of the mowing dispute's being consistent with its practice of harassing her. At best, these allegations support the reasonable inference that the City's supposed custom was the but-for

---

assume *arguendo* that Zeng has adequately pleaded those elements, however, because it is most apparent that she has not plausibly pleaded moving-force causation.

cause of her arrest, which is insufficient to establish moving-force causation. *See Mason*, 806 F.3d at 280.

Nor has Zeng alleged any facts supporting the reasonable inference that the City adopted the supposed custom "with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* For example, she does not allege that the City, by sending its mower onto her property with police supervision, was deliberately indifferent to the known or obvious consequence that the confrontation between her and the police officers would result in her unlawful arrest. *See, e.g*, *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (explaining that plaintiff did not plausibly allege that policy of not requiring suspect's address to be updated before execution of search warrant was maintained with deliberate indifference to known or obvious consequence of unlawful entry where plaintiff did not allege similar past incidents).

Accordingly, the court holds that Zeng has not plausibly pleaded municipal liability, and her claims against the City are therefore dismissed.

VI

Zeng also asserts claims against Officer Cox in his official capacity. Claims against a government agent in his official capacity may be dismissed as duplicative of the same claims made against the government entity itself. *See, e.g., Palo ex rel. Est. of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county).

Here, Zeng's official-capacity claims against Officer Cox are duplicative of her claims

against the City.  Accordingly, these claims are dismissed.

VII

Zeng also alleges claims against Officer Cox in his personal capacity.

A

Officer Cox maintains that Zeng's personal-capacity claims should be dismissed under

the doctrine of qualified immunity.  "The doctrine of qualified immunity protects government

officials 'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  The analysis has two prongs: (1) "whether the facts that a plaintiff

has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at

issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232.

"Qualified immunity is applicable unless the official's conduct violated a clearly established

constitutional right." *Id.*  The decision of "which of the two prongs of the qualified immunity

analysis should be addressed first" is within the court's "sound discretion . . . in light of the

circumstances in the particular case at hand." *Id.* at 236.

B

The court turns first to Zeng's claims for false imprisonment, wrongful arrest, and

denial of her right to freedom of speech.

Officer Cox is qualifiedly immune against personal liability for these claims if it was

not clearly established at the time of Zeng's arrest that probable cause was lacking. *See*

*Johnson v. City of San Antonio*, 2023 WL 3019686, at \*8 (5th Cir. Apr. 20, 2023) (per

curiam) (citing *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)) (explaining that, to

plausibly plead false imprisonment or wrongful arrest, plaintiff must plausibly allege that

there was no probable cause for arrest); *Spiller v. Harris Cnty., Tex.*, 113 F.4th 573, 579 (5th

Cir. 2024) (same as to claim that arrest violated free speech rights); *Albright v. Oliver*, 510

U.S. 266, 273 (1994) (explaining that due process claims are subsumed by other

constitutional claims when, as here, those claims arise under "a particular Amendment [that]

'provides an explicit textual source of constitutional protection' against a particular sort of

government behavior"). Zeng has the burden to show that Officer Cox violated clearly

established law. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "And the burden

is heavy: A right is clearly established only if relevant precedent 'ha[s] placed the . . .

constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

(2011)).

Even assuming *arguendo* that Officer Cox lacked probable cause to arrest Zeng, she

has not met her burden to show that relevant precedent at the time of her arrest placed that

issue "beyond debate." *Id.* Zeng cites to *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir.

2021), for the proposition that "individuals have the 'right to be free from arrest without a

good faith showing of probable cause.'" P. Resp. (ECF No. 21) at 18. But this court in this

case "must frame the constitutional question with specificity and granularity." *Morrow*, 917

F.3d at 874-75.

> The Supreme Court has "repeatedly told courts . . . not to define clearly established law at [that] high level of generality." Rather, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." That is because qualified immunity is inappropriate only where the officer had "fair notice"—"in light of the specific context of the case, not as a broad general proposition"—that his particular conduct was unlawful.

*Id.* at 875 (citations and emphases omitted). Zeng has not identified, and the court has not located, any relevant precedent that gave Officer Cox fair notice that he lacked probable cause to arrest Zeng for the Texas state-law criminal offense of interfering with the duties of a public servant, Tex. Penal Code Ann. § 38.15(a)(7), when he observed her halting the City's contractor while he was mowing her property at the City's direction.

Thus Officer Cox is entitled to qualified immunity against Zeng's claims for false imprisonment, wrongful arrest, and denial of her freedom of speech without due process of law.

C

Nor has Zeng pleaded plausible claims for violation of her Fourteenth Amendment rights to procedural and substantive due process.

Zeng appears to allege that her arrest violated her right not to be deprived of liberty without due process of law, as well as her substantive due process right to be free from arbitrary government action. Zeng's claims do not plead a violation of her constitutional rights, however, because they are subsumed by her more specific claims that her arrest violated her First and Fourth Amendment rights. *See Albright*, 510 U.S. at 273 ("Where a

- 13 -

particular Amendment 'provides an explicit textual source of constitutional protection'

against a particular sort of government behavior, 'that Amendment, not the more generalized

notion of "substantive due process," must be the guide for analyzing these claims.'"); *id.* at

275 (Scalia, J., concurring) ("I think it unlikely that the procedures constitutionally "due,"

with regard to an arrest, consist of anything more than what the Fourth Amendment

specifies."); *Reynolds v. New Orleans City*, 272 Fed. Appx. 331, 338 (5th Cir. 2008) (per

curiam) (applying *Albright* to procedural due process claim).  Officer Cox is therefore

entitled to qualified immunity regarding Zeng's due process claims.

Accordingly, Zeng's personal-capacity claims against Officer Cox are dismissed.

VIII

Although the court is dismissing Zeng's claims against defendants, it will permit her

to replead all but her due process claims against the City and Officer Cox and her official-

capacity claims against Officer Cox.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370

F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often

afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case,

unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling

or unable to amend in a manner that will avoid dismissal).  There is no indication that Zeng

cannot, or is unwilling to, cure all the defects that the court has identified.  The court

therefore grants her 28 days from the date this memorandum opinion and order is filed to file

a second amended complaint.

* * *

For the reasons explained, the court grants defendants' December 12, 2024 motion to dismiss and also grants Zeng leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

March 18, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE